IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JOSÉ RIVERA-RIVERA,

    Petitioner,

    v.

UNITED STATES OF AMERICA,

    Respondent.

CIVIL NO. 12-1967 (MEL)
(Related to Cr. No. 08-0204 (DRD))

**OPINION AND ORDER**

On May 27, 2008, a grand jury returned an indictment against petitioner José Rivera-Rivera, charging him with violations to Title 21, United States Code, Sections 846, 841(a)(1), and 860. ECF No. 3 in case 08-204 (DRD).[1] On January 19, 2010, petitioner entered a straight guilty plea – that is without an agreement with the government – to counts one through five and seven, count one consisting of a conspiracy to possess with intent to distribute controlled substances, counts two through five being substantive counts of possession with intent to distribute controlled substances, and count seven presenting a forfeiture allegation. ECF No. 3051 in case 08-204 (DRD). Petitioner was eventually sentenced to serve one hundred twenty months of imprisonment plus ten years of supervised release as to each of the counts to which he had pled guilty, to be served concurrently with each other. A special monetary assessment of five hundred dollars was also imposed. ECF No. 3824 in case 08-204 (DRD). On May 7, 2010, judgment was entered accordingly. ECF No. 3825 in case 08-204 (DRD).

---

[1] All docket citations refer to case 12-1967 (MEL) unless explicitly indicated otherwise.

Pending before the court is petitioner's motion under 28 U.S.C. §2255 to vacate, set aside, or correct the sentence imposed upon him in case 08-204 (DRD). ECF No. 1. Petitioner alleges that his "Sixth Amendment Constitutional right was violated as counsel [Raymond Rivera-Esteves] was ineffective for advising petitioner that by pleading guilty and qualifying for a safety valve reduction, petitioner could receive a sentence less than the ten-year statutory minimum for a violation of 21 U.S.C. §§841(a)(1), 846 & 860." Id. at 4. He adds that "he was misled into pleading guilty on the assumption that he could get less than the mandatory minimum if he was to receive a safety valve reduction" and that he "would have proceeded to a jury trial without this erroneous advice." Id. at 5. Finally, petitioner alleges that counsel Rivera-Esteves "did not convey a more favorable plea agreement offered to petitioner and his co-defendants simultaneously in which petitioner's co-defendants received less than the ten year mandatory minimum sentence." Id. at 7. A response to petitioner's motion was filed by the government. ECF No. 9.

This matter was assigned to the undersigned for all further proceedings, including the entry of judgment. ECF No. 4. Pursuant to said order of referral, an evidentiary hearing was held on July 29, 2014. ECF No. 14. At the hearing, petitioner, who was represented by counsel, withdrew the first two grounds stated in his §2255 motion. Therefore, the evidentiary hearing was limited in scope to address the only remaining third ground stated in the §2255 motion, namely whether counsel Rivera-Esteves failed to communicate to petitioner in a timely manner any of the plea offers that the government had tendered. ECF No. 11.

Counsel Rivera-Esteves was appointed by the court to represent petitioner in case 08-204 (DRD). During the approximately nineteen months that elapsed between the moment that petitioner had his initial appearance and the date in which he entered a guilty plea, counsel

2

Rivera-Esteves met with him on three occasions, once at the Metropolitan Detention Center ("MDC") and twice at counsel Rivera-Esteves' office (which was also counsel's residence) while petitioner was under conditions of pretrial release on bail.[2] In addition, petitioner and counsel Rivera-Esteves also communicated by phone.

According to petitioner, counsel Rivera-Esteves advised him that although he was facing, if convicted, a sentence of imprisonment between ten years and life, an agreement with the government for a sentence recommendation between twelve and fourteen years of incarceration was viable. Petitioner testified that that was the first and only plea offer ever communicated to him; in particular, counsel Rivera-Esteves never informed him of a plea offer for one hundred eight months (or nine years) of imprisonment. The first time that he learned about that offer was when petitioner was in California and received a letter with the government's response to his §2255 motion, although he suspected of the existence of other offers earlier once he found out at MDC after he was sentenced that other co-defendants (including others who had been charged like him as "runners" of the drug trafficking organization) had received more favorable sentences.[3] Although petitioner testified that he "was always willing to plead guilty" because the evidence against him was strong and that from the inception of the case he had the intention to

---

[2] The initial appearance was held on June 16, 2008, the bond for bail purposes was posted on October 10, 2008, the change of plea hearing occurred on January 19, 2010, and the defendant surrendered to begin serving his sentence of imprisonment on June 1, 2010. Therefore, the defendant was also under conditions of release for approximately nineteen months.

[3] Other co-defendant "runners" received the following sentences of imprisonment: [35] Alfred Rivera-Torres – 84 months (plea agreement); [37] Ángel Torres-Padilla – 120 months (straight plea); [38] Félix Quiñones-Rivera – 120 months (straight plea); [39] Christopher González-Jorge – 120 months (straight plea); [40] José L. Torres-Pacheco – 84 months (plea agreement); [41] Luis A. Picart-Álvarez – 90 months (plea agreement); [42] Andy Y. Feliciano-Cruz – 65 months (plea agreement); [43] Christopher Colón-Ramírez – 70 months (plea agreement); [44] José L. González-Correa – 87 months (plea agreement); [45] Marisol Sierra-Rodríguez – 78 months (plea agreement); [46] Felipe Ramos-Toledo – 60 months (plea agreement); [47] Ángel L. Cosme-Torres – 121 months (straight plea); [48] Israel Torres-Maldonado – 96 months (plea agreement). These sentences are those originally imposed and do not reflect any subsequent amendments, if any, made to them.

enter a guilty plea, according to him he was not aware of the nine-year plea offer when he pled guilty.[4]

Counsel Rivera-Esteves' testimony regarding the communications that he had with his client differs from petitioner's recollection regarding plea offers. In particular, counsel Rivera-Esteves testified that there was a nine-year plea offer from the government "that was relayed to the client on more than several occasions". More specifically, at the hearing held on July 29, 2014, counsel Rivera-Esteves testified that he communicated this plea offer to the petitioner at least six or seven times, but that he has no documentation memorializing the fact that those communications between him and his client had occurred. According to counsel Rivera-Esteves, petitioner told him that he was not interested in the nine-year plea offer and moreover, the petitioner did not express to him any interest in pleading guilty until the day of trial.[5] However, counsel Rivera-Esteves also indicated that petitioner conveyed to him that he would be willing to accept a plea offer with a sentence recommendation of seven or eight years of imprisonment, but the government was not receptive to that counteroffer. By the date that the trial date was scheduled to begin, the government's nine-year plea offer had been withdrawn, but petitioner, counsel Rivera-Esteves testified, had a "change of heart" and decided to enter a straight plea.[6]

---

[4] At hearing held on July 29, 2014, the petitioner acknowledged, upon questions posed during cross-examination, that at the time of the sentencing hearing he rejected the safety valve option. According petitioner, his lawyer never advised him of the possibility of obtaining a sentence below the ten-year statutory minimum, but the court did inform him of that fact. Yet, petitioner, upon questions by counsel on re-direct examination, contends that under the 9-year plea offer scenario, he would not have had to do the safety valve to qualify for a sentence below the statutory minimum.

[5] The defendant did, in fact, enter a guilty plea on the day that the trial was scheduled to begin. ECF Nos. 2889 and 3051 in case 08-204 (DRD). Yet on that date, according to counsel Rivera-Esteves, the government was amenable only to a straight plea, that is to a scenario in which the petitioner would enter a guilty plea to all counts in which he had been charged in the indictment. Although previously a motion for change of plea had been filed by counsel Rivera-Esteves, subsequently there was another motion to strike it filed by the same attorney indicating that the motion for change of plea had been filed in error. ECF No. 1125 in case 08-204 (DRD).

[6] Although petitioner entered a straight plea, counsel Rivera-Esteves testified that he at least managed to convince the government to agree to stipulate a particular quantity of drugs for which the petitioner would be held

A defendant facing a criminal charges is entitled to have effective assistance of counsel. "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland v. Washington, 466 U.S. 668, 687-688 (1984). Furthermore, such a defendant must also show that this deficient performance prejudiced him in his defense. Id. Prejudice in this context requires showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

The controversy in the matter at bar boils down to the following: petitioner alleges that his attorney never informed him of the government's 9-year plea offer, while counsel Rivera-Esteves claims that he did so on at least six or seven occasions. Petitioner claims that he was always interested in entering a guilty plea, rather than going to trial. Counsel Rivera-Esteves, however, testified that petitioner was willing to accept a plea agreement with a recommendation of seven or maybe eight years of imprisonment, but that the government was never open to that alternative. Under these circumstances, the government eventually withdrew the nine-year plea offer and the petitioner never expressed an interest in entering a guilty plea until the very same day that the trial was scheduled to begin. Petitioner rejected the safety valve option prior to being sentenced, but he had second thoughts about said decision soon after the sentencing hearing was over.

---

accountable "to leave the door open for a possible safety valve." Counsel Rivera-Esteves added that he did explain to petitioner the benefits of the safety valve and that on the date of the sentencing hearing the court also explained to petitioner the benefits of the safety valve, but petitioner declined the safety valve option. Yet, not too long after the sentencing hearing had concluded, the petitioner told counsel Rivera-Esteves that he was interested in the safety valve.

Ultimately, the resolution of this matter requires a credibility determination. After listening to the testimonies of both petitioner and counsel Rivera-Esteves, the court finds that there is no reason to discredit counsel Rivera-Esteves' version of how the events transpired: (1) there was a 9-year plea offer made by the government; (2) said offer was communicated by counsel Rivera-Esteves to petitioner on at least 6 or 7 occasions; (3) petitioner made a counteroffer of 7, or possibly even 8, years of imprisonment; (4) the government rejected the 7-8 year counteroffer; (5) petitioner failed to accept the 9-year offer within the deadline set by the government, prompting the government to withdraw said offer; (6) on the day that the trial was scheduled to begin, petitioner changed his mind and decided to enter a guilty plea, but by that time, the government was not interested in pursuing any plea agreements; (7) petitioner decided to enter a straight plea, but consciously rejected the safety valve option after being warned by both counsel Rivera-Esteves and the court about the benefits of the safety valve; (8) soon after the sentencing hearing was over petitioner seemed to regret his decision regarding the safety valve, but by that time, the sentence had already been imposed.

On cross-examination counsel Rivera-Esteves admitted that he never met with petitioner for trial preparation purposes. This admission is cause for concern because if petitioner truly did not express a willingness to accept the government's plea offer prior to the trial date, one would have expected defense counsel to have met with his client at a minimum once for trial preparation purposes (unless counsel was aware well in advance that the client was going to be pursuing a straight plea, an alternative that is inconsistent with what has been described by counsel Rivera-Esteves as a "change of heart" by petitioner on the first day of trial). Yet, petitioner is not alleging in his §2255 motion that his attorney was ineffective in preparing adequately for trial. Thus, we address this concern no further.

Some of the questions made to counsel Rivera-Esteves on cross-examination also seem to suggest that the voucher under the Criminal Justice Act submitted by counsel for payment of the legal services rendered and the files in counsel Rivera-Esteves' computer do not specify the communications that counsel Rivera-Esteves claims to have made to his client or the government regarding plea offers or counteroffers. However, counsel Rivera-Esteves clarified that the voucher does not contain all the communications that he had with petitioner.[7] Although counsel Rivera-Esteves' lack of detailed documentation regarding his communications with petitioner should make us pause, counsel Rivera-Esteves was consistent during his testimony with the fact that he did indeed communicate the nine-year offer to petitioner and that the petitioner definitely rejected it.

The court finds counsel Rivera-Esteves' account to be consistent and credible. Therefore, there is no reason to conclude that petitioner has received ineffective assistance of counsel. In view of the foregoing, petitioner's § 2255 motion to vacate the sentence imposed is DENIED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 29th day of June, 2015.

                                                            s/Marcos E. López
                                                             United States Magistrate Judge

---

[7] In addition, during counsel Rivera-Esteves' cross-examination at the hearing held on July 29, 2014 he indicated that communications with his client should be reflected in the voucher "if I billed them." This implies that there is a possibility that he did not invoice all of the communications that he in fact had with his client.